# OLSHAN

PARK AVENUE TOWER • 65 EAST 55TH STREET • NEW YORK, NEW YORK 10022
TELEPHONE: 212.451.2300 • FACSIMILE: 212.451.2222

EMAIL: TFLEMING@OLSHANLAW.COM
DIRECT DIAL: 212.451.2213

December 9, 2015

**VIA EMAIL**

The Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
Chambers 2210, Courtroom 15-D
New York, NY 10007

        Re:   *Gemini Master Fund, Ltd. and Black Mountain Equities, Inc. v. OxySure Systems Inc.*, 15-cv-09546 (AT) - Request for Pre-Motion Conference

Dear Judge Torres:

      We represent plaintiffs Gemini Master Fund, Ltd. ("Gemini") and Black Mountain Equities, Inc. ("BME"). In accordance with your Honor's rule of Individual Practice III.A.ii, we write to request a pre-motion conference concerning Plaintiff's proposed motion for a preliminary injunction.

      Plaintiffs seeks a preliminary injunction directing defendant OxySure Systems, Inc. ("OxySure") to deliver to plaintiff Gemini, and to plaintiff BME, 2,563,724 and 1,921,733 shares of OxySure common stock, respectively, pursuant to a warrant issued by OxySure to each plaintiff, the proceeds from the sale of these shares will be held in escrow *pendent lite*. As set forth below, Courts in this District have routinely granted preliminary injunctive relief where the warrant holder has a clear right to the shares and the issuer is a thinly capitalized, money-losing enterprise unable to satisfy a substantial money judgment. *See, e.g., Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp.*, No. 02 CV 10237 (GBD), 2003 WL 328302, at *4 (S.D.N.Y. Feb. 11, 2003) (granting preliminary injunction and directing defendant to deliver shares pursuant to a warrant; "the language of the contract clearly provides for the exercise of the Warrant stock. Consequently, this Court finds that plaintiffs have shown a 'clear' or 'substantial' likelihood of success on the merits."); *see also, Castle Creek Tech. Partners, LLC v. CellPoint Inc.*, No. 02 CIV. 6662 (GEL), 2002 WL 31958696 (S.D.N.Y. Dec. 9, 2002) (granting preliminary injunction compelling defendant corporation with sustained operating losses and limited cash on hand to deliver shares of its common stock after defaulting on a convertible note); *Alpha Capital Anstalt v. Advanced Cell Technology, Inc.*, No. 11 Civ. 6458 (PAC) (S.D.N.Y. Oct. 14, 2011) (granting preliminary injunction directing defendant to deliver shares of its common stock; plaintiff "is substantially likely to prevail on the merits [where] [t]he terms of the Warrants and Convertible Notes are clear and not in dispute.").

## Gemini and BME Can Demonstrate a Likelihood of Success on the Merits

Gemini and BME each entered into a Securities Purchase Agreement ("SPA") with OxySure in May 2015, pursuant to which each plaintiff purchased a Convertible Note and Common Stock Purchase Warrant (the "Warrants"). The terms of the Warrants entitle Plaintiffs to purchase, at any time, shares of OxySure common stock at a given "Exercise Price." The Exercise Price was initially set at $0.90, with Gemini entitled to purchase up to 363,636 shares and BME up to 272,727 shares, subject to adjustments as to both the Exercise Price and number of shares.

The Warrants require an adjustment in the Exercise Price and number of shares if OxySure sells common stock or "common stock equivalents," i.e., securities convertible into common stock, in a "Dilutive Issuance." (Warrants § 6) A Dilutive Issuance occurs when OxySure issues securities that entitle "any person to acquire shares of Common Stock, at a price per share *less than* the then current Exercise Price [of the Warrant]." (*Id.*) If a Dilutive Issuance occurs, "the Exercise Price shall be reduced to such lower Dilutive Issuance price and the number of Warrant Shares issuable [under the Warrant] shall be increased such that the Aggregate Exercise Price Payable hereunder, after taking into account the decrease in the Exercise Price, shall be equal to the Aggregate Exercise Price Prior to such adjustment." (*Id.*) Further, OxySure is required to give notice of any such adjustment no later than 3 trading days following the issuance of common stock or common stock equivalents.

On July 7, 2015, OxySure closed a round of financing that included the issuance of Series C Preferred shares, convertible into common stock at a 35% discount to the "market price" of common stock, defined as "the average of the two lowest closing prices during the ten trading days prior to the Conversion Date." (Series C Preferred Designation § 6(b)) The conversion price of the preferred shares thus floated daily with the "market price." The Series C Preferred shares have a stated value of $2.00 per share, but were sold with a 10% original issue discount, at $1.80 per share. The effective discount to the market price on the conversion of a Series C Preferred share was therefore approximately 41%. On July 7, 2015, the date of issuance, the two lowest closing prices in the last ten trading days were $0.508 per share and $0.519 per share, entitling the Series C holder to purchase common stock at an effective price of $0.3037 per share. OxySure, however, did not give any notice of adjustment to Plaintiffs.

Under the SPA executed in May 2015, OxySure covenanted and agreed that it would not enter "into any financing transactions that contain a conversion price that changes daily or varies based on the current market price of the common stock (a 'Variable Rate Transaction')." The issuance of the Series C Preferred shares indisputably constituted a "Variable Rate Transaction", and a breach of the SPA. The Warrants address the consequences of this breach, providing that "[i]f the Company enters into a Variable Rate Transaction, despite the prohibition set forth in the Purchase Agreement, the Company *shall be deemed* to have issued Common Stock or Common Stock Equivalents at the *lowest possible conversion* price at which such securities may be converted or exercised." (emphasis added) As a result, the Exercise Price, and share amount in the Warrants, adjusted when the conversion price of the Series C Preferred shares declined.

December 9, 2015
Page 3

Plaintiff Gemini delivered a valid and properly endorsed Exercise Notice to OxySure on November 25, 2015 to exercise its Warrant, on a cashless basis, at an Exercise Price of $0.1067, entitling Gemini to 2,563,724 shares of OxySure common stock. The Exercise Price was the effective price for a share of common stock then available to a Series C Preferred holder. Similarly, BME delivered a valid and properly endorsed Exercise Notice to OxySure on December 4, 2015, entitling BME to 1,921,733 shares of OxySure common stock. Both exercises applied the cashless formula contained in Section 3.6(c) of the Warrant.

Section 3.1 of the Warrants states that "[n]ot later than three (3) Trading Days after such date (the "Share Delivery Date"), the Company shall deliver, or cause to be delivered, to the holder (A) a certificate or certificates representing the shares of Common Stock purchased upon exercise of this Warrant." Section 3.3 of the Warrants further state that OxySure's obligations to "issue and deliver the shares of Common Stock purchased upon exercise of this Warrant… are absolute and unconditional…"and that OxySure may not refuse to exercise the Warrant

> unless an injunction from a court, on notice to holder, restraining and or enjoining exercise of all or part of this Warrant shall have been sought and obtained, and the Company posts a surety bond for the benefit of the holder in the amount of 150% of the value of the shares of Common Stock to be purchased upon exercise of this Warrant, which is subject to the injunction, which bond shall remain in effect until the completion of arbitration/litigation of the underlying dispute and the proceeds of which shall be payable to the holder to the extent it obtains judgment.

In breach of their obligation, OxySure has refused to deliver a single share of its common stock to either plaintiff. The shares in issue have a market value of approximately $1.1 million at current prices for OxySure common stock.

Accordingly, plaintiffs have a strong likelihood of success on the merits of their breach of contract claims.

Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary Injunction

If a preliminary injunction is not issued, Plaintiffs will suffer irreparable harm, because OxySure is insolvent and will not be able to satisfy a money judgment. *See Castle Creek Tech. Partners, LLC v. CellPoint Inc.*, No. 02 CIV. 6662 (GEL), 2002 WL 31958696, at *3 (S.D.N.Y. Dec. 9, 2002) (granting injunction where defendant "even if not currently insolvent, may become so in the near future"; "defendant's imminent insolvency can constitute irreparable harm when it is possible that the defendant will not be able to pay damages at the conclusion of the litigation.").

OxySure is a thinly capitalized startup that depends on periodic financing to keep its doors open. Its most recent annual report discloses in bold type.

December 9, 2015
Page 4

> *We are an early stage company and have a history of net losses. Currently, we have one product that we manufacture and make available for commercial sale, and to date we have not generated any significant product revenue. As a result, we expect to continue to incur substantial net losses for the foreseeable future, which raises substantial doubt about our ability to continue as a going concern.*

OxySure's most recent financial statements bear out these warnings. It has been operating at a loss since inception and has an accumulated deficit of more than $22 million. In the first nine months of 2015, OxySure suffered an operating loss of $2.5 million and a net loss of $3.9 million, based on $2.8 million in revenue. For the same period last year, OxySure's operating loss was $950,000, with a net loss of $1.1 million, based on $1.8 million in revenue. Excluding the restricted cash that OxySure raised in the recent round of financing that triggered the Dilutive Event (cash that is not available to pay a money judgment), OxySure had a mere $6,312 cash on hand as of September 30, 2015.

In *Alpha Capital Anstalt v. Advanced Cell Technology, Inc.*, No. 11 Civ. 6458 (PAC) (S.D.N.Y. Oct. 14, 2011), the Court explained:

> [Plaintiff] has met its burden to establish irreparable harm. Plaintiff specifically bargained for stock in the event that [defendant] breached the notification and adjustment provisions in the ... Convertible Note[]. Money damages would not make [plaintiff] whole. It is appropriate to hold [defendant] to the terms of that agreement, as "[c]ompelling compliance rather than simply awarding damages reinforces the sanctity of bargains between corporations and creditors and investors[.]" *Longview Special Fin., Inc. v. Infinium Labs, Inc.*, No. 006 Civ. 1772 (RJH), at 21 (S.D.N.Y. Nov. 29, 2006) (granting request for preliminary injunction and directing defendant's compliance with terms of conversion notices and warrants).... Second, even if a money judgment were appropriate, there is a risk that [defendant] could not satisfy it, as [defendant's] form 10-K for December 2010 confirms that [defendant] had an accumulated deficit of $180,949,523 at the time of filing and that the company's revenues are limited.

Here, as in *Alpha Capital*, Plaintiffs specifically bargained for the delivery of OxySure common stock, and OxySure should be held to the terms of its agreements. Moreover, given OxySure's dire financial condition, it is highly unlikely that OxySure will be able to satisfy a money judgment.

For the foregoing reasons, Plaintiffs respectfully request the opportunity to move the Court for a preliminary injunction as set forth above.

December 9, 2015
Page 5

                          Respectfully submitted,

                          Thomas J. Fleming

cc:    Mazin Sbaiti (by email)
       (Counsel for Defendant)

3502735-2