UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEMINI MASTER FUND, LTD and BLACK
MOUNTAIN EQUITIES, INC.

          Plaintiffs,

      -against-

OXYSURE SYSTEMS, INC.
(*aka* OXYSURE THERAPEUTICS, INC.)

          Defendant.

C.A. No. 15 Civ. 9546 (AT)

---

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO DISMISS OR STAY IN FAVOR OF FIRST-FILED ACTION

---

OLSHAN FROME WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

*Attorneys for Plaintiffs*

Table of Contents

Page

Preliminary Statement .................................................................................................. 1

Statement of Facts ...................................................................................................... 2

    The Parties .............................................................................................................. 2

    Plaintiffs' Investments in OxySure ......................................................................... 3

    OxySure's Breach of the Warrants and the Note ................................................... 5

    Procedural History of the Texas Proceedings ........................................................ 6

    Procedural History of this Action ........................................................................... 6

Argument ..................................................................................................................... 7

    I    THE COURT SHOULD ENFORCE OXYSURE'S CONSENT TO
          LITIGATION IN THIS DISTRICT ......................................................... 7

          A.    The Parties Entered into a Valid Forum Selection Cause ........................... 7

          B.    Defendant Has No Viable Theory to Rewrite the Parties'
               Agreements Designating New York as the Forum ..................................... 8

    II    THE COURT SHOULD ALLOW THIS CASE TO PROCEED ........................ 12

    III    THE COURT SHOULD DENY THE EMERGENCY MOTION FOR AN
          INTERIM STAY ........................................................................................ 14

Conclusion .................................................................................................................. 16

i

3547324-4

Table of Authorities

Page

CASES

*AGR Fin., L.L.C. v. Ready Staffing, Inc.,*
99 F. Supp. 2d 399 (S.D.N.Y. 2000) ..................................................................10

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co.,*
LLC, No. 11 CIV. 6804 PAE, 2012 WL 1382278 (S.D.N.Y. Apr. 20, 2012) ......................12

*Bassett v. Elec. Arts, Inc.,*
93 F. Supp. 3d 95, 106 (E.D.N.Y. 2015) ..............................................................11

*Columbia Pictures Indus., Inc. v. Schneider,*
435 F.Supp. 742 (S.D.N.Y.1977) ......................................................................14

*Composite Holdings v. Westinghouse Elec. Corp.,*
992 F. Supp. 367 (S.D.N.Y. 1998) ......................................................................8

*Congress Financial Corp. v. Bortnick,*
No. 00 CIV. 6361 (WHP), 2000 WL 1634248 (S.D.N.Y. Oct. 31, 2000) ....................9, 10

*D.H. Blair & Co. v. Gottdiener,*
462 F.3d 95 (2d Cir. 2006) ..............................................................................7

*Dornoch Ltd. v. PBM Holdings, Inc.,*
666 F.Supp.2d 366 (S.D.N.Y.2009) ...................................................................14

*E.E.O.C. v. Univ. of Pa.,*
850 F.2d 969 (3rd Cir.1988) ...........................................................................13

*Employers Ins. of Wausau v. Fox Entm't Grp., Inc.,*
522 F.3d 271 (2d Cir. 2008) ...........................................................................14

*Factors Etc., Inc. v. Pro Arts, Inc.,*
579 F.2d 215 (2d Cir. 1978) ...........................................................................13

*Farrell Lines v. Columbus Cello–Poly Corp.,*
32 F.Supp.2d 118 (S.D.N.Y.1997) ....................................................................12

*Grosvenor v. Qwest Corp.,*
854 F. Supp. 2d 1021 (D. Colo. 2012) ...............................................................11

*Guardian Music Corp. v. James W. Guercio Enterprises, Inc.,*
459 F. Supp. 2d 216 (S.D.N.Y. 2006) *aff'd*, 271 F. App'x 119 (2d Cir. 2008)......................12

3547324-4

Table of Contents
(continued)

Page

*In re Zappos.com, Inc., Customer Data Sec. Breach Litig.,*
   893 F. Supp. 2d 1058 (D. Nev. 2012).....................................................................11

*J. Lyons & Co. v. Republic of Tea, Inc.,*
   892 F. Supp. 486 (S.D.N.Y. 1995) .........................................................................13

*JewelAmerica v. Frontstep Sols. Grp., Inc.,*
   No. 02 CIV. 1328 (RO), 2002 WL 1349754 (S.D.N.Y. June 20, 2002) ................13

*John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distributors Inc.,*
   22 F.3d 51 (2d Cir. 1994) ......................................................................................10

*Karl Koch Erecting Co. v. New York Convention Ctr. Dev. Corp.,*
   838 F.2d 656 (2d Cir. 1988) ..................................................................................11

*Koninklijke Philips Elecs. v. Digital Works, Inc.,*
   358 F. Supp. 2d 328 (S.D.N.Y. 2005) ...................................................................11

*M/S Bremen v. Zapata Off-Shore Co.,*
   407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)...............................................8

*Nat'l Equip. Rental, Ltd. v. Szukhent,*
   375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964)................................................7

*Nat'l Union Fire Ins. Co. v. Int'l Wire Group, Inc.,*
   No. 02 Civ. 10338, 2003 WL 21277114 (S.D.N.Y. June 2, 2003). .......................14

*National School Reporting Services, Inc. v. National Schools of California, Ltd.,*
   924 F.Supp. 21 (S.D.N.Y.1996) .............................................................................9

*Ontel Products, Inc. v. Project Strategies Corp.,*
   899 F. Supp. 1144 (S.D.N.Y. 1995) .....................................................................13

*Oquendo v. CCC Terek,*
   No. 14-CV-9835 RA, 2015 WL 2449323 (S.D.N.Y. May 22, 2015) ......................8

*Phillips v. Audio Active Ltd.,*
   494 F.3d 378 (2d Cir. 2007) ....................................................................................8

*Pirone v. MacMillan, Inc.,*
   894 F.2d 579 (2d Cir. 1990) ..................................................................................13

*PowerDsine, Inc. v. Broadcom Corp.,*
   No. 07CV2490(SJF)(WDW), 2008 WL 268808 (E.D.N.Y. Jan. 29, 2008)............10

<u>Table of Contents</u>
(continued)

<u>Page</u>

*Raytheon Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    306 F. Supp. 2d 346 (S.D.N.Y. 2004) ................................................................14

*Roby v. Corp. of Lloyd's*,
    996 F.2d 1353 (2d Cir. 1993) ........................................................................7

*Sun Forest Corp. v. Shvili*,
    152 F. Supp. 2d 367 (S.D.N.Y. 2001) ............................................................9

*U.S. Bank Nat. Ass'n v. Ables & Hall Builders*,
    582 F. Supp. 2d 605 (S.D.N.Y. 2008) ............................................................11

*Wagman v. Chater*,
    No. 94 CIV. 7243 (DC), 1996 WL 219646 (S.D.N.Y. May 1, 1996) ....................................11

iv

Preliminary Statement

Defendant OxySure Systems, Inc. ("OxySure") asks this Court to dismiss this case for lack of personal jurisdiction, or alternatively, to stay in favor of an action that it filed in the Eastern District of Texas. The transactional documents that give rise to Plaintiffs' claims contain mandatory New York forum clauses and New York choice of law clauses. Under settled law, the forum clauses constitutes a consent to New York jurisdiction. Such clauses are consistently enforced by New York courts. OxySure claims to have not understood the business terms of the investment agreements that it executed with Plaintiffs. It invokes the term "fraud" in a bid to avoid the express language in those agreements concerning the choice of forum, but it does not cite a single allegedly false statement. Nor does it identify specific dealings regarding the forum clauses. To the contrary, OxySure insists that it had little or no contact at all with Plaintiffs before taking their money.

OxySure fails to tell the Court the whole story. OxySure utilized the services of a financial advisor located in lower Manhattan, Wellington Shields & Co. ("Wellington"), to secure Plaintiffs' funds. The Wellington firm reached out to Plaintiffs in March 2015 and had extensive dealings with them for over two months before the deal closed. The warrants and notes that OxySure issued contain straightforward mandatory forum clauses for New York Courts. Within weeks after taking Plaintiffs' money, OxySure raised funds from other investors with a clause requiring all litigation to be conducted in the courts of New York. The language in that deal is taken verbatim from the notes issued to Plaintiffs. OxySure is now a defendant in another case in this Courthouse commenced by yet another investor who bargained for and received agreements with a New York forum clause. OxySure has not voiced any objection to jurisdiction in that case.

Nothing in OxySure's motion provides the least support to depart from either the plain language of its investment agreements or well established case law enforcing the mandatory forum clauses in those agreements. Put another way, having invested in OxySure based on a New York forum and choice of law clause, Plaintiffs should not be left to chase OxySure in Texas to recover on their defaulted notes and dishonored warrants. OxySure's rush to the courthouse in Texas with a complaint filed simultaneous with its breach of the warrants, likewise, provides no basis to re-write the parties' contracts and eviscerate their agreement to conduct all litigation in New York.

For the reasons set forth below, we respectfully request that the Court deny OxySure's motion.

Statement of Facts

The facts pertinent to this motion are set forth in the accompanying declarations of Thomas J. Fleming, dated January 15, 2016, Adam Baker, dated January 14, 2016, and Steven Winters, dated January 14, 2016, the exhibits annexed to those declarations, and the declarations submitted in support of Plaintiffs' Motion for Preliminary Injunction, namely the Declarations of Adam Baker, dated December 30, 2015 (Dkt. No. 11), Steven Winters, dated December 29, 2015 (Dkt. No. 12), and Thomas J. Fleming, dated December 30, 2015, (Dkt. No. 13), and their exhibits.

The Parties

Plaintiffs are investment funds that invested in defendant OxySure Systems, Inc. ("OxySure") in May 2015. Plaintiff Gemini Master Fund, Ltd. ("Gemini") is a Cayman Islands corporation, managed by an investment advisor based in Encinitas, California. Steven Winters is the President of Gemini's investment manager. (Winters Dec. ¶ 1). Plaintiff Black Mountain

3547324-4

Equities, Inc. ("BME") is a California corporation based in San Diego, California. Adam Baker is its CEO. (Baker Dec. ¶ 1).

Defendant OxySure Systems, Inc. ("OxySure"), recently renamed OxySure Therapeutics, Inc., is a Delaware Corporation with its principal place of business in Frisco, Texas. OxySure is a public company with common stock registered with the SEC. Its shares trade under the symbol "OXYS." (Dkt. No. 13 Ex. 1).

<u>Plaintiffs' Investments in OxySure</u>

According to OxySure's CEO, Julian Ross, "We never negotiated or performed any part of this transaction with either Plaintiff in New York. I executed Oxysure's agreement in Texas. There have been no calls, emails or faxes to New York predicated on this transaction or in anticipation of it." (Dkt. 17 ¶ 3).  In fact, the negotiations preceding Plaintiffs' investment have a strong New York nexus.

To raise capital, OxySure retained Wellington Shields & Co. ("Wellington"), an NYSE member firm located at 140 Broadway, New York, New York 10005. (Baker Dec. ¶ 3). On behalf of OxySure, Mr. Georgatos of Wellington approached Plaintiff BME telephonically on March 3, 2015 and an initial call with three Wellington bankers occurred the next day. (Baker Dec. ¶ 3; Baker Dec Ex. 1). Over the next two months, Plaintiffs exchanged term sheets and draft agreements with Mr. Georgatos, who acted as the representative for OxySure.  All of these communications went to, or through, New York, where Mr. Georgatos had his office. On May 15, 2015, for example Mr. Georgatos transmitted, from New York, Oxysure's proposed revisions to the Note it later issued to Plaintiffs. (Baker Dec. Ex. 2).

Each Plaintiff entered into a Securities Purchase Agreement (the "SPA") with OxySure on May 19, 2015, acquiring a Warrant and a Note. (Dkt.  Nos. 11 & 12, Exs. 2-3) When the deal

closed, Plaintiffs each wired funds to Wellington's New York bank account with JP Morgan

Chase. (Baker Dec. Ex. 6; Winters Dec. Ex. 4).

The Warrants issued by OxySure include a New York choice of law clause and a clause

designating New York as the mandatory forum for litigation:

> … THIS WARRANT SHALL BE GOVERNED BY AND
> CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE
> STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES
> OF CONFLICTS OF LAWS. ANY ACTION BROUGHT
> CONCERNING THE TRANSACTIONS CONTEMPLATED BY
> THIS WARRANT SHALL BE BROUGHT ONLY IN THE
> STATE COURTS OF NEW YORK OR IN THE FEDERAL
> COURTS LOCATED IN THE STATE OF NEW YORK;
> PROVIDED, HOWEVER, THAT THE HOLDER MAY
> CHOOSE TO WAIVE THIS PROVISION AND BRING AN
> ACTION OUTSIDE THE STATE OF NEW YORK.…

(Baker Dec. Ex. 2 at 13).

The Notes issued pursuant to the SPA also designate New York law as well as New York

Courts as the exclusive forum for dispute resolution, including for disputes regarding the SPA.

Section 7(d) of each Note provides:

> All questions concerning the construction, validity, enforcement
> and interpretation of this Note shall be governed by and construed
> and enforced in accordance with the internal laws of the State of
> New York, without regard to the principles of conflict of laws
> thereof. Each party agrees that all legal proceedings concerning the
> interpretation, enforcement and defense of the transactions
> contemplated by this Note or the Purchase Agreement (whether
> brought against a party hereto or its respective affiliates, directors,
> officers, shareholders, employees or agents) shall be commenced
> in the state and federal courts sitting in the City of New York,
> Borough of Manhattan (the "New York Courts"). Each party
> hereto hereby irrevocably submits to the exclusive jurisdiction of
> the New York Courts for the adjudication of any dispute hereunder
> or in connection herewith or with any transaction contemplated
> hereby or discussed herein (including with respect to the
> enforcement of this Note or the Purchase Agreement), and hereby
> irrevocably waives, and agrees not to assert in any suit, action or
> proceeding, any claim that it is not personally subject to the

> jurisdiction of such New York Courts, or such New York Courts
> are improper or inconvenient venue for such proceeding.

(Baker Dec. Ex. 3 at 15).

Plaintiffs sought New York as a forum based on the familiarity of New York Courts with financial matters. Plaintiffs, like many other investment professional and fincial institutions, prefer New York law and Courts in their transaction documents. In fact, Defendant's recent SEC filings demonstrate that it has also often entered into agreements with forum selection clauses designating New York as the exclusive forum and waiving any objections to jurisdiction thereunder.  As recently as July 8, 2015, Defendant closed a round of financing pursuant to an SPA with a forum selection clause that is nearly identical to that contained in the Notes held by Plaintiffs.  (Fleming Dec. ¶ 2).  OxySure's July 8, 2015 filings also include a Certificate of Designation for the sale of Series C Convertible shares.  That certificate contains an additional irrevocable consent to New York jurisdiction by Defendant, albeit with slightly different language.  (Fleming Dec. ¶ 3).  An OxySure SPA containing a similar forum selection clause was entered into with a corporation by the name of Alpha Capital Anstalt, and is the subject of a case against OxySure filed on July 14, 2015, and pending before this very Court.  (Dkt. No. 13 Ex. 6).  Although OxySure is represented by the same counsel in the Alpha Capital Anstalt action, it has not objected to New York jurisdiction.  (Fleming Dec. ¶ 4; Fleming Dec. Exs. 3-5).

<u>OxySure's Breach of the Warrants and the Note</u>

On November 25, 2015, Plaintiff Gemini delivered a validly endorsed Exercise Notice to OxySure, pursuant to which Gemini is entitled to 2,563,724 shares of OxySure common stock. (Dkt. No. 12 Ex. 7). The shares were due on December 1, 2015. On December 4, 2015, Plaintiff BME delivered a validly endorsed Exercise Notice, pursuant to which it was entitled to 1,921,733 shares. (Dkt. No. 11 Ex. 4). No shares were delivered to either Plaintiff.

On January 1, 2016, the Notes held by Plaintiffs matured. Defendant has defaulted on the Notes, paying neither interest nor principal. (Baker Dec. ¶ 7; Winters Dec. ¶ 6).

Procedural History of the Texas Proceedings

Instead of delivering shares to Gemini, OxySure rushed to Court. On the date of its default under the Warrants, December 2, 2015, OxySure filed a Complaint in the Eastern District of Texas (Case No. 4:15-cv-00821-ALM-CAN), seeking declaratory relief to cancel, rescind or reform the Warrants and the Notes. (Dkt.  No.13 Ex. 6). While OxySure refers to its pleading as seeking rescission, OxySure makes no pretense of returning to Plaintiffs their invested capital. Defendant's pleading consists of a series of conclusory assertions that the Warrants are unfair, unreasonable, or the by-product of some unspecified duplicity.  The core of Defendant's theory seems to rest on the suggestion that it did not read the Warrants and did not understand their express terms.

On December 29, 2015, BME and Gemini filed a motion to transfer venue or, in the alternative, to dismiss OxySure's complaint; that motion is still pending. (Fleming Dec. Ex. 4).

Procedural History of this Action

On December 7, 2015, Plaintiffs filed their Complaint in this action, alleging breach of contract and seeking specific performance under the Warrants and, in the alternative, money damages. (Dkt. No. 1). Plaintiffs served their Summons and Complaint on December 9, 2015. (Dkt. No. 8). Plaintiffs filed their Motion for a Preliminary Injunction on December 30, 2015. (Dkt. No. 10).

On January 6, 2016, Defendant filed its Motion to Dismiss. Defendant did so without a pre-motion letter. (Dkt. No. 16). On January 8, 2016, Defendant also filed an "Emergency Motion" requesting that consideration of Plaintiffs' preliminary injunction motion be stayed pending a jurisdiction and venue determination in the Eastern District of Texas action. (Dkt. No.

6

18). On January 8, 2016, the Court directed Plaintiffs to file their opposition to Defendant's initial motion by January 15, 2016. (Dkt. No. 20). On January 14, 2015, Plaintiffs filed their Amended and Supplemental Complaint adding counts for relief arising from defendant's default under the Notes. (Dkt. No. 24).

Argument

I

## THE COURT SHOULD ENFORCE OXYSURE'S CONSENT TO LITIGATION IN THIS DISTRICT

**A.**     The Parties Entered into a Valid Forum Selection Cause

The Warrants here could not be clearer: "ANY ACTION BROUGHT CONCERNING THE TRANSACTIONS CONTEMPLATED BY THIS WARRANT SHALL BE BROUGHT ONLY IN THE STATE COURTS OF NEW YORK OR IN THE FEDERAL COURTS LOCATED IN THE STATE OF NEW YORK; PROVIDED, HOWEVER, THAT THE HOLDER MAY CHOOSE TO WAIVE THIS PROVISION AND BRING AN ACTION OUTSIDE THE STATE OF NEW YORK." (Baker Dec. Ex. 2 at 14) (emphasis in the original). The accompanying Notes include an equally clear consent to exclusive New York jurisdiction – a consent that extends to the SPA. Overwhelming precedent compels the enforcement of these bargained-for rights.

It is well settled that "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964)). The Second Circuit has acknowledged a "strong public policy in favor of forum selection and arbitration clauses." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993). Indeed, a forum selection clause is presumptively enforceable "unless "(1) its

7

incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected

forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum

state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff

effectively will be deprived of his day in court." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 392

(2d Cir. 2007); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907,

1916, 32 L. Ed. 2d 513 (1972) (a contractual forum selection clause must be enforced unless the

party opposing enforcement "clearly show[s] that enforcement would be unreasonable and

unjust, or that the clause was invalid for such reasons as fraud or overreaching"). Defendant

makes no claim of unfairness, inconvenience or hardship. Nor does its motion offer evidence of

fraud. As a result, the mandatory forum change must be honored.

      B.      Defendant Has No Viable Theory to Rewrite the
              Parties' Agreements Designating New York as the Forum

Instead of addressing the standards set forth in *Phillips v. Audio Active Ltd.*, 494 F.3d

378, 392 (2d Cir. 2007), Defendant advances a hodge podge of misguided, or just plain mistaken,

theories in a bid to revise the plain English in the Warrants and the Notes.

First, defendant contends that by virtue of its vague claims for rescission in the Texas

proceeding, it is free to bring suit where it chooses. But courts have consistently rejected this

theory unless a party pleads with particularity that the inclusion of the forum clause itself was the

product of fraud. *See, e.g. Composite Holdings v. Westinghouse Elec. Corp.*, 992 F. Supp. 367,

369 (S.D.N.Y. 1998) (holding that "such a forum selection clause will stand against a claim of

fraud unless the party resisting enforcement alleges and proves that… the fraud was directed to

the forum selection clause itself.") (internal quotations omitted). *See also, Oquendo v. CCC*

*Terek*, No. 14-CV-9835 RA, 2015 WL 2449323, at *15 (S.D.N.Y. May 22, 2015) (holding that

allegations of duress as to contract as a whole insufficient to challenge enforceability of forum

selection clause), *and see Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 381 (S.D.N.Y. 2001) ("a party seeking to invalidate a forum-selection clause on grounds that she was coerced or fraudulently induced into acquiescing to the clause must specifically prove that but for the drafter's misconduct, it would not have been included in the agreement."). Conclusory allegations of fraud and coercion, moreover, are insufficient. *See, e.g., National School Reporting Services, Inc. v. National Schools of California, Ltd.*, 924 F.Supp. 21, 24 (S.D.N.Y.1996).

Defendant's pleadings, both before this Court and in the Eastern District of Texas, fall far short of this standard. Defendant's motion does not offer a single fact other than a conclusory sentence in support of its fraud in the inducement theory; neither does the Complaint filed in the Eastern District of Texas. (Dkt. No. 13, Ex. 6). In fact, the Texas Complaint seeks rescission on five separate grounds, none of which are fraud, and none of which are included in the grounds specifically enumerated by federal courts that permit non-enforcement of a forum selection clause. Defendant's suggestion that it was left to the mercy of Plaintiffs is belied by its use of a sophisticated financial advisor at Wellington and the fact that the deal was negotiated for more than two months. (Baker Dec. ¶ ¶ 3-5)

Next, Defendant mistakenly argues that the forum selection clause is "permissive and unenforceable." The clause is mandatory – not permissive – by its plain terms: "*any* action brought concerning the transactions contemplated by this warrant *shall* be brought *only* in" the State or Federal courts of New York (emphasis added).

Defendant relies upon *Congress Financial Corp. v. Bortnick*, No. 00 CIV. 6361 (WHP), 2000 WL 1634248, at *1 (S.D.N.Y. Oct. 31, 2000). The Court there reviewed a forum selection clause with a *non-exclusive* consent to New York jurisdiction. *See id.* at *1. The Court in

9

*Congress Financial* noted that the "'choice of forum must be mandatory rather than permissive.'" *Id.* (quoting *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distributors Inc.*, 22 F.3d 51, 53 (2d Cir. 1994)). Here, the language of the Warrants is mandatory: any action "*shall* be brought… *only* in the state courts of New York or in the federal courts located in the State of New York…." (Baker Dec. Ex. 2 at 14) (emphasis added).

Next, Defendant argues that the language in the Warrants allowing the investor-plaintiff to sue in other forums permits OxySure to do the same. Defendant cites two cases, *PowerDsine* and *AGR Financial*, for this proposition. But these cases actually support Plaintiffs. The forum selection clause in *PowerDsine* provided that "This Agreement shall be governed by, construed and enforced, at the sole election of the company at any court." *See PowerDsine, Inc. v. Broadcom Corp.*, No. 07CV2490(SJF)(WDW), 2008 WL 268808, at *4 (E.D.N.Y. Jan. 29, 2008). The Court held that this forum selection clause did "not unambiguously indicate that [the Defendant] consent[ed] to resolve disputes arising from the agreement in any particular forum or submit to the jurisdiction of any court…" and should therefore be considered permissive. *Id.* The forum selection clause in the Warrants, by contrast, contains mandatory language. *PowerDsine* is thus inapplicable.

Even less helpful to Defendant is *AGR Financial*. In that case, the Court held that the use of the word "may" in a forum selection clause allowed the plaintiff to bring an action in either a New York state or federal court, but did not render the clause permissive. *AGR Fin., L.L.C. v. Ready Staffing, Inc.*, 99 F. Supp. 2d 399, 402 (S.D.N.Y. 2000). Like the clause in *AGR Financial*, the forum selection clause in the Warrants provides that an action "shall be brought only" in either state or federal courts in New York. While the precise Court in New York is left open, the clause nevertheless mandates New York as the sole forum.

10

Defendant also contends that a clause which allows "one party to waive and change the forum without notice renders it facially illusory and substantively unfair, and thus, unenforceable." (Dkt.  No. 16 at 10). But New York courts long ago rejected the argument that forum selection clauses that limit one party are unenforceable. *Karl Koch Erecting Co. v. New York Convention Ctr. Dev. Corp.*, 838 F.2d 656, 659 (2d Cir. 1988). In fact, all of the cases cited by Defendant in support of its argument on this ground either involve the validity of an arbitration clause that allows unilateral modification of the clause itself by the party seeking to enforce it, or are inapplicable on other grounds.[1] Unilateral modification of a forum selection clause without notice and the bargained-for ability of one party to waive such a clause are wholly separate issues.

For its third theory, defendant claims a lack of personal jurisdiction. "Where an agreement contains a valid and enforceable forum selection clause, it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process." *U.S. Bank Nat. Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 615 (S.D.N.Y. 2008). The mandatory forum selection clauses in the Warrants and the Note thus spell the end for this contention. *See Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F. Supp. 2d 328, 333

---

[1] *In Re Zappos*, *Basset*, and *Grosvenor* all involve arbitration clauses providing for unilateral modification. *See In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1066 (D. Nev. 2012) ("Here, the Terms of Use gives Zappos the right to change the Terms of Use, including the Arbitration Clause, at any time without notice to the consumer."), *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 106 (E.D.N.Y. 2015) ("The Court agrees with Judge Gold's conclusion that the arbitration provision was not invalid as illusory simply because EA had the unilateral right to modify the agreement."); *Grosvenor v. Qwest Corp.*, 854 F. Supp. 2d 1021, 1034 (D. Colo. 2012) ("Because Qwest retained an unfettered ability to modify the existence, terms and scope of the arbitration clause, it is illusory and unenforceable."). Defendant cites to *Wagman v. Chater* for the proposition that illusory agreements are not enforceable under New York law, but Wagman involved a gift of money where mutuality of obligation was found lacking and thus the court found that no contract existed whatsoever; Wagman does not contain a single reference to a forum selection clause. *Wagman v. Chater*, No. 94 CIV. 7243 (DC), 1996 WL 219646, at *3 (S.D.N.Y. May 1, 1996).

11

(S.D.N.Y. 2005) ("A valid forum selection clause establishes sufficient contacts with New York for purposes of jurisdiction and venue."); *Farrell Lines v. Columbus Cello–Poly Corp.*, 32 F.Supp.2d 118, 127 (S.D.N.Y.1997) ( "It is well-settled that jurisdiction by consent satisfies constitutional principles of due process."); *see, e.g., Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co.*, LLC, No. 11 CIV. 6804 PAE, 2012 WL 1382278, at *2 (S.D.N.Y. Apr. 20, 2012) (holding that forum selection clause providing that "Any such suit against [The Club] and/or its agents shall be brought in the United States District Court for the Southern District of New York" established both personal jurisdiction and proper venue).

As a fourth point, defendant argues that its "first filing" in the Eastern District of Texas also supports dismissal of this action. There is no legal basis for this theory, which would render every forum clause a dead letter. A party could simply ignore the forum clause, file first, and then allege priority. Defendant's misguided theory would not only render forum clauses illusory, but also encourage the race to the courthouse that such clauses are designed to avoid.

II

<u>THE COURT SHOULD ALLOW THIS CASE TO PROCEED</u>

As an alternative to dismissal, Defendant seeks to stay this action in favor of its "first filed" Texas suit, an action commenced in breach of the forum selection clauses in the Warrants and the Notes.

The simplest response to Defendant's motion to stay is that it would render the mandatory forum clauses in the Warrants and the Notes illusory. Here, Plaintiffs bargained for a specific forum: New York. To undo that arrangement merely because Defendant acted in breach of its agreement would reward Defendant for its wrongful conduct. *See, e.g., Guardian Music Corp. v. James W. Guercio Enterprises, Inc.*, 459 F. Supp. 2d 216, 223 (S.D.N.Y. 2006) *aff'd*, 271 F. App'x 119 (2d Cir. 2008) (stating, as black-letter law, that "a contracting party cannot

12

benefit from its own breach.") (internal citations omitted). The proposed stay would force Plaintiffs to proceed to Texas and litigate there all of the issues raised in this case -- which is now far more advanced than the Texas matter. The Court is scheduled to hear a significant motion on January 29, 2016 and will hold its Initial Pretrial Conference on February 6, 2016. In short, once the Court concludes that the Notes and Warrants contain a mandatory forum selection clause, the motion to stay must be denied.

In any event, Defendant's improper Texas action does not benefit from "first filed" status. To start "the first-filed rule… is usually disregarded where the competing suits were filed merely days apart." *Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1153 (S.D.N.Y. 1995); *see also JewelAmerica v. Frontstep Sols. Grp., Inc*., No. 02 CIV. 1328 (RO), 2002 WL 1349754, at *1 (S.D.N.Y. June 20, 2002) ("The bulk of the precedent in this circuit is that the first filed rule is usually disregarded where the competing suits were filed only days apart.").

Defendant filed the Texas Action seeking declaratory relief on December 2, 2015. Plaintiffs filed the action pending before this court on December 7, 2015, just three business days later. Given that the Second Circuit has refused to apply the first-filed rule to actions filed five days apart, this Court should refuse to apply the first-filed rule here. *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978) abrogated on other grounds by *Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990). Moreover, OxySure gained its first filed status through dishonest means, a further ground for rejection. *See, e.g., J. Lyons & Co. v. Republic of Tea, Inc.*, 892 F. Supp. 486, 490-91 (S.D.N.Y. 1995) (noting that "inequitable conduct, bad faith, or forum shopping" justify departure from the first to file rule (quoting *E.E.O.C. v. Univ. of Pa.,* 850 F.2d

13

969, 972 (3rd Cir.1988)) ; *see also Raytheon Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 306 F. Supp. 2d 346, 352 (S.D.N.Y. 2004).

The presumption of priority "is not to be applied in a 'rigid' or 'mechanical' way." *Dornoch Ltd. v. PBM Holdings, Inc.*, 666 F.Supp.2d 366, 369 (S.D.N.Y.2009) (quoting *Columbia Pictures Indus., Inc. v. Schneider*, 435 F.Supp. 742, 747 (S.D.N.Y.1977)). Specifically, the Second Circuit has held that while courts are generally required to assess the "balance of convenience" between competing lawsuits, certain "special circumstances" allow a court to dismiss a first-filed action without even considering the balance of convenience. *Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 274–75 (2d Cir. 2008). Amongst the special circumstances that have long been recognized by the Second Circuit are situations in which "the first-filed lawsuit is an improper anticipatory declaratory judgment action. *Id*. at 275. Exceptions to the first-filed rule "are premised on the notion that the federal declaratory judgment is not a prize to the winner of a race to the courthouses." *Id*. Indeed, "Courts in the Second Circuit have repeatedly refused to exercise jurisdiction over declaratory actions motivated by a desire to wrest the choice of forum from the real plaintiff." *Nat'l Union Fire Ins. Co. v. Int'l Wire Group, Inc.*, No. 02 Civ. 10338, 2003 WL 21277114, at *6 (S.D.N.Y. June 2, 2003). Because Defendant's Texas Action constitutes an improper anticipatory declaratory judgment action, it should be accorded no priority.

III

THE COURT SHOULD DENY THE EMERGENCY MOTION FOR AN INTERIM STAY

Defendant's emergency motion appears to advance three separate grounds on which it believes the Court should stay consideration of Plaintiffs' motion for preliminary injunction. First, Defendant asserts that it received inadequate notice under Rule 65. Second, Defendant claims that Rule 65 required Plaintiffs to give every OxySure shareholder notice of its motion for

14

preliminary injunction. Third, Defendant asserts that Plaintiffs failed to identify any irreparable harm that would entitle them to injunctive relief. Defendant's arguments will be addressed in turn.

Defendant's motion alleges that (1) the complaint was not served upon OxySure until December 19, 2015,  (2) the Court's December 18, 2015 briefing schedule was never served upon OxySure, and (3) "Neither Mr. Ross at Oxysure nor Oxysure's undersigned counsel was served the motion [for preliminary injunction] until January 4, 2016." (Dkt. No. 18 ¶ 3). Documentary evidence flatly contradicts Defendant's claims and obviates any claim of inadequate notice under Rule 65.

OxySure was served with the Complaint on December 9, 2015. (Dkt. No. 8). On December 22, 2015, the Court's December 18, 2015 order was delivered to Defendant's counsel as well as to Defendant's corporate offices. (Fleming Dec. ¶ 7; Fleming Dec. Ex. 5). Plaintiffs' motion for a preliminary injunction was delivered to Defendant's counsel on December 31, 2015, and to OxySure's offices on January 4, 2016. (Fleming Dec. ¶ 8; Fleming Dec. Ex. 6). Given that the Court extended Defendant's time to respond to Plaintiffs' motion to January 15, 2015 (Dkt. No. 23), Defendant's counsel has had more than a fair opportunity to oppose the motion.

Next, Defendant claims that Rule 65 requires Plaintiffs to give notice of their motion for preliminary injunction to "Oxysure's shareholders and stakeholders" because of the potential impact of the motion on OxySure's share price." (Dkt. No. 18 ¶ 5). Defendant cites no authority for this far fetched proposition. None exists. Defendant, through its officers and directors, protects shareholder interests. There is no legal basis for further notice.

Finally, Defendant claims that Plaintiffs' pleadings fail to identify any potential harm that would justify injunctive relief. In fact, the issue of irreparable harm is addressed in Plaintiffs' motion in detail at pp. 13 – 18. (Dkt. No. 14).

Accordingly, the Court should deny Defendant's "emergency motion."

<u>Conclusion</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motions to dismiss, or, alternatively, to stay this action in their entirety, as well as its "emergency motion."

Dated: New York, New York
       January 15, 2016

OLSHAN FROME WOLOSKY LLP

By: _____
       Thomas J. Fleming
       Nicholas S. Hirst
       *Attorneys for Plaintiffs*
       Park Avenue Tower
       65 East 55th Street
       New York, New York 10022
       (212) 451-2300

16